UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TRACY SULLI, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

KEURIG GREEN MOUNTAIN, INC.,

Defendant.

Case No.: 26-cv-6420

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, TRACY SULLI ("Plaintiff"), by and through her attorneys, brings this action individually and on behalf all others similarly situated persons (as defined below in the Class Definition section) who bought against KEURIG GREEN MOUNTAIN, INC. ("Defendant" or "Keurig" as referred to hereafter). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## INTRODUCTION

1. Defendant markets and sells plastic single-serve coffee pods ("K-pods", "Product" or "Products") nationwide in retail stores and online stores such as Amazon. Defendant deceptively labels and advertises its K-Cup single-use beverage pods as "recyclable," despite the fact that a majority of consumers are unable to recycle K-Cups. Most recycling centers in the United States do not recycle K-Cups due to their small size, irregular shape, multi-material construction, frequent contamination issues, and unfavorable economic factors.

2. Despite these facts, Keurig promotes its K-Cup pods as "recyclable" because they are made from polypropylene #5 plastic. However, the company relies on a purely theoretical definition of recyclability that ignores the fundamental principles outlined in the FTC's Green Guides and does not align with consumer understanding. This deceptive marketing strategy allows Keurig to exploit consumer demand for environmentally responsible products.

3. Plaintiff purchased the Products in reliance on Defendant's false representations that the Products are recyclable. Plaintiff viewed Defendant's false representations on the labels and other marketing materials for the Products. If Plaintiff had known that the Products were not recyclable, Plaintiff would not have purchased the Products and would have instead sought out single-serve pods or other coffee products that are otherwise compostable, recyclable, or reusable. At a minimum, Plaintiff would not have paid as much as he did if she had known the Products could not be recycled.

4. Defendant's misrepresentations concerning the Products have the tendency or capacity to deceive or confuse reasonable consumers. As such, Defendant's practices violate New York consumer protection statutes, specifically New York General Business Law §§ 349 and 250.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from Defendant.

6. This Court has personal jurisdiction over Defendant. Defendant has sufficient minimum contacts with the state of New York and purposefully availed itself, and continue to avail itself, to the jurisdiction of New York through the privilege of conducting its business

ventures in the state of New York, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendant does business throughout this district, and Plaintiff made her purchase of the Products in Monroe County, New York, which is located in the Western District of New York.

**CLASS ACTION ALLEGATIONS (PURSUANT TO LOCAL RULE 23(b)(1))**

8. **Class Definition (Local Rule 23(b)(1)):** Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of herself and the members of the following proposed New York class:

All person who bought the Products in the State of New York from August 9, 2022 through the date notice of class certification is disseminated. Excluded from the Class are: (1) Defendant and all directors, officers, employees, partners, principals, shareholders, and agents of Defendant; (2) Any currently sitting United States District Court Judge presiding over this matter; (3) Class Counsel; and (4) any governmental entity.

9. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

10. **Numerosity (Local Rule 23(b)(2)(A)):** Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous.

11. **Typicality and Adequacy (Local Rule 23(b)(2)(B)):** Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

12. **Commonality (Local Rule 23(b)(2)(C)):** The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

a. whether Defendant advertises and markets the Product as recylable;

b. whether the Products are recyclable;

c. whether Defendant's conduct constitutes the violations of laws alleged herein;

d. whether Defendant's labeling, sale and advertising set herein are unlawful, untrue, or are misleading, or likely to deceive a reasonable consumer;

e. whether Defendant knew or should have known that the representations were false or misleading;

f. whether Defendant's representations regarding the recyclability of the Products are in compliance with the Green Guides;

g. whether Defendant knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on the Product;

h. whether Defendant's representations, concealments and non-disclosures concerning the Product are likely to deceive the reasonable consumer;

i. whether Defendant's representations, concealments and non-disclosures concerning the Product violate the New York General Business Law §§349 and 350; and

j. whether Plaintiff and the Class are entitled to restitution and damages.

13. **Predominance and Superiority (Local Rule 23(b)(2)(D)):** Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits make it impossible and impracticable for members of the proposed Class to prosecute their claims individually, and they multiply the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

b. when Defendant's liability has been adjudicated, claims of all Class members can be determined by the Court;

c. this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

d. without a class action, many Class members would continue to suffer injury, and Defendant's violations of law will continue without redress while Defendant continues to reap and retain the substantial proceeds of their wrongful conduct.

14. **Manageability:** The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final relief with respect to the Class as a whole.

## THE PARTIES

15. Plaintiff, Tracy Sulli, is a natural person and a citizen and resident of Fairport, New York located in Monroe County, New York. Plaintiff purchased the Products from a local retailer on numerous occasions throughout the class period.

16. Plaintiff's most recently purchased Defendant's K-Cups March of 2025 from Wegmans grocery store in Penfield, New York. Prior to purchasing the Products, Plaintiff saw and read the packaging. Plaintiff reasonably believed that the product Plaintiff purchased was recyclable. Plaintiff was not aware that the Product could not be recycled. Had Plaintiff known that the Products were not recyclable, Plaintiff would not have purchased the Products.

17. With respect to the settlement in *Smith v. Keurig Green Mountain, Inc.*, No. 18-cv-06690-HSG, 2023 WL 2250264 (N.D. Cal. Feb. 27, 2023), Plaintiff did not make a claim in that settlement. Indeed, Plaintiff received no notice of that settlement nor had any knowledge of that settlement.

18. Defendant Keurig Green Mountain, Inc., a food and beverage manufacturer and distributor, is incorporated in Delaware with its corporate headquarters located at 53 South Avenue, Burlington, Massachusetts 01803.

19. Defendant has labeled, advertised, distributed, and sold the Class Products for sale at its locations in New York during the statute of limitations period.

## FACTUAL ALLEGATIONS

**A. Background**

20. Keurig has been aware for years that consumers are increasingly concerned about the environmental impact of their consumption habits and that such concerns materially influence purchasing decisions.[1] As early as 2016, Keurig's own research showed that consumer worries about the environmental impact of K-Cup pods affected purchasing behavior, and the company publicly recognized the business risk of failing to address sustainability and recyclability concerns.[2] In public filings, Keurig warned investors that consumer focus on sustainability—particularly the recyclability of packaging and reduction of single-use plastics—could negatively impact sales if unmet.[3]

21. In response, Keurig announced that it had redesigned its K-Cup pods to use polypropylene (#5) plastic instead of #7 plastic and pledged that 100 percent of its K-Cup pods

[1] Truth in Advert., Inc., *Keurig's Deceptive "Recyclable" K-Cup Pod Campaign* 2 (Jan. 26, 2026), https://truthinadvertising.org/wp-content/uploads/2026/01/1_26_26-Keurig-complaint-to-FTC.pdf.

Keurig Dr Pepper Inc. Form 10-K for the Year Ended December 31, 2020, https://www.sec.gov/Archives/edgar/data/1418135/000141813521000005/kdp-20201231.htm

[2] *Id.*; Order Instituting Cease-and-Desist Proceedings, In re Keurig Dr Pepper Inc., Exchange Act Release No. 100983 (Sept. 10, 2024), https://www.sec.gov/files/litigation/admin/2024/34-100983.pdf.

[3] Truth in Advert., Inc., *supra* note 1; See also Keurig Dr Pepper Inc. Form 10-K for the Year Ended December 31, 2019, https://www.sec.gov/Archives/edgar/data/1418135/000141813520000007/kdp-10kx12312019.htm

would be "recyclable" by the end of 2020.[4] Keurig thereafter made recyclability a central focus of its marketing strategy, emphasizing that consumers would be able to easily identify recyclable pods through on-package messaging, recycling instructions, and the #5 symbol on the pod.[5] By 2019, Keurig assured investors that it was on track to meet its recyclability goal and represented that it had conducted extensive testing with municipal recycling facilities to validate that K-Cup pods could be effectively recycled.[6] In 2020, Keurig claimed that it had achieved this goal and that all K-Cup pods sold in the United States were recyclable.[7]

22. Keurig did not disclose, however, that two of the largest recycling companies in the United States—together operating more than one-third of U.S. recycling facilities—had raised serious concerns regarding the recyclability of K-Cup pods and informed Keurig that they did not intend to accept them.[8] These omissions resulted in an enforcement action by the U.S. Securities and Exchange Commission, which concluded with Keurig agreeing to a cease-and-desist order and a $1.5 million civil penalty.[9]

---

[4] *Id.* See also *Brewing Transformation: Sustainability at Keurig Green Mountain*, Keurig Green Mountain, https://www.keurigdrpepper.com/wp-content/uploads/2024/03/Keurig-Green-Mountain-Sustainability-Report-2016.pdf.

[5] *Id.*

[6] *Id.* See also Keurig Dr Pepper Inc. Form 10-K for the Year Ended December 31, 2019, https://www.sec.gov/Archives/edgar/data/1418135/000141813520000007/kdp-10kx12312019.htm.

[7] *Id.* See also Keurig Dr Pepper Inc. Form 10-K for the Year Ended December 31, 2020, https://www.sec.gov/Archives/edgar/data/1418135/000141813521000005/kdp-20201231.htm

[8] *See* FN 1. at 3. See also Press Release, U.S. Sec. Exch. Comm'n, SEC Charges Keurig with Making Inaccurate Statements Regarding Recyclability of K-Cup Beverage Pod (Sept. 10, 2024), https://www.sec.gov/newsroom/press-releases/2024-122

[9] *Id.*; Press Release, U.S. Sec. & Exch. Comm'n, *SEC Charges Keurig with Making Inaccurate Statements Regarding Recyclability of K-Cup Beverage Pods* (Sept. 10, 2024), https://www.sec.gov/newsroom/press-releases/2024-122.

23. Keurig's recyclability representations have also been the subject of prior litigation and regulatory action. Between 2018 and 2020, federal class actions alleged that Keurig misled consumers into believing K-Cup pods were recyclable; those actions were settled in 2023, with Keurig agreeing to pay $10 million and make only minor modifications to its recyclability labels.[10] Similar concerns arose internationally, and in 2022, Keurig Canada agreed to pay a $3 million penalty and modify its marketing to resolve claims by Canada's Competition Bureau regarding misleading recyclability representations.[11]

24. Despite this record, Keurig has continued to market K-Cup pods as recyclable, as the demand for single-serve beverage pods continues to grow and K-Cup sales remain strong.[12]

**B. Deceptive Marketing at Issue**

25. Keurig promotes the purported recyclability of its K-Cup pods across multiple channels, including product packaging, its website, online retail listings, and social media. On packaging and in digital media, Keurig prominently displays the words "Recyclable K-Cup® Pods" alongside the chasing arrows recycling symbol, often on a conspicuous green banner designed to attract consumer attention.[13]

---

[10] Truth in Advert., Inc., *supra* note 1, at 3.

[11] Press Release, Competition Bureau Can., *Keurig Canada to Pay $3 Million Penalty to Settle Recycling Claims* (Jan. 6, 2022), https://www.canada.ca/en/competition-bureau/news/2022/01/keurig-canada-to-pay-3-million-penalty-to-settle-competition-bureaus-concerns-over-coffee-pod-recycling-claims.html

[12] Truth in Advert., Inc., *supra* note 1, at 3; Coffee Pods Market Trends, Cognitive Mkt. Rsch. (2025). https://www.cognitivemarketresearch.com/articles/coffee-pods-market-trends-and-future-opportunities; Keurig Dr Pepper's Revenue by Segment https://bullfincher.io/companies/keurig-dr-pepper/revenue-by-segment

[13] Truth in Advert., Inc., *supra* note 1, at 4–8.

26. Any qualifying language, such as instructions to "check locally" or disclosures that K-Cup pods are "not recycled in many communities," appears in fine print that is visually separated from the primary recyclability claim and blends into the background, making it difficult to notice or read.[14] The following are a few examples:










[14] *Id.*

27. Keurig's marketing materials repeatedly convey the message that consumers can place K-Cup pods in curbside recycling bins and that the pods will be recycled.[15] A few examples:

**Keurig Sustainability Report**[16]




**Keurig Sustainability Webpage**[17]




---

[15] *Id.*

[16] https://www.keurigdrpepper.com/wp-content/uploads/2024/03/Keurig-Green-Mountain-Sustainability-Report-2016.pdf

[17] https://www.keurig.com/hub/sustainability

**C. Consumers' Understanding of These Marketing Messages**

28. Consumer demand for environmentally friendly products is increasing, and a majority of U.S. consumers prefer such products and are willing to pay more for them.[18] At the same time, consumers generally lack the ability to independently verify the accuracy of environmental marketing claims at the point of purchase and therefore rely on representations made by manufacturers.[19]

29. Research shows that reasonable consumers understand the term "recyclable," particularly when paired with the chasing arrows symbol, to mean that a product will in fact be recycled if placed in a recycling bin.[20] Experts in visual perception and consumer behavior have explained that consumers will rarely notice the asterisk accompanying the recyclability claim or even be able to read the fine-print.[21] Most assume the symbol, along with the word "Recyclable," informs them that the Product is recyclable.[22]







[18] *Id. at 9*
[19] *Id.*
[20] *Id.;How Consumers Feel About and Respond to Recycling & How2Recycle: A Consumer Research Summary, GreenBlue, July 29, 2022, [https://greenblue.org/2022/07/29/how-consumersfeel-about-and-respond-to-recycling-how2recycle-a-consumer-research-summary/](https://greenblue.org/2022/07/29/how-consumersfeel-about-and-respond-to-recycling-how2recycle-a-consumer-research-summary/)*

[21] *Id.* at 9–10; Jeff Johnson, *Report on Consumer Perception of Recyclability Claims* (Jan. 2, 2024).

[22] *Id.*

30. Keurig has highlighted its recyclable message to consumers while downplaying important qualifying instructions and disclaimers. As a result, Keurig's marketing conveys a clear and unambiguous message to consumers that K-Cup pods will be recycled if placed in curbside recycling bins.

**D. K-Cups are Not Typically Recycled in Reality**

**(a) Company's Own Statements**

31. In practice, K-Cup pods are not typically recycled and overwhelmingly end up in landfills. Keurig itself implicitly acknowledges this reality by conceding that K-Cup pods are not accepted in many communities and by promoting its proprietary K-Cycle mail-back program for business customers, which requires paid shipping and specialized handling because K-Cup pods cannot be reliably recycled through ordinary curbside systems.[23]

**(b) Expert Findings on K-Cup Recyclability**

32. To evaluate the real-world recyclability of K-Cup pods, TINA.org engaged the services of SCS Engineers, a nationally recognized environmental consulting firm that specializes in waste management solutions and recycling feasibility.[24] Between March and June 2025, SCS surveyed recycling industry representatives in major metropolitan areas across the ten most populous U.S. states, including California, Florida, Georgia, Illinois, Michigan, New York, North Carolina, Ohio, Pennsylvania, and Texas.

---

[23] Truth in Advert., Inc., *supra* note 1, at 11; Keurig K-Cycle Program, https://keurigkcycle.com/.

[24] *See* SCS Engineers Report (Sept. 30, 2025), available at https://truthinadvertising.org/wpcontent/uploads/2026/01/9_30_25-SCS-Engineers-Expert-Report.pdf

33. SCS based its findings on those survey responses, a review of published industry reports, expert consultations,[25] and an analysis of state waste characterization data. SCS determined that K-Cup pods are not typically accepted for recycling in municipal recycling programs in the United States. SCS identified several factors that limit or prevent the recycling of K-Cup pods, including:

• **Size**. K-Cup pods measure approximately two inches by two inches and are frequently too small to be captured by the mechanical sorting equipment used in many materials recovery facilities ("MRFs").[26] As a result, the pods frequently fall through sorting screens and are routed for disposal with residual waste rather than recovered for recycling.

• **Shape and design.** K-Cup pods consist of multiple materials, including plastic, paper filters, aluminum foil, and coffee grounds. SCS found that this multi-material design, combined with the pods' low weight and irregular shape, interferes with automated sorting systems, including optical sorters and robotic sorting equipment. Pods are frequently not emptied or disassembled by consumers, and they may break during sorting, releasing contaminants that cause the material to end up as landfill disposal.

• **Contamination.** Residual coffee grounds and liquids commonly contaminate the plastic and aluminum components of K-Cup pods. Many recycling facilities lack the ability to adequately clean or separate these materials and therefore do not accept K-Cup pods for processing.

---

[25] SCS Engineers interviewed a Vice President of a major North American waste management company, operating 367 collection operations, 248 transfer stations and 75 recycling centers across 41 states in the U.S. and Canada; and a Solid Waste and Recycling Manager for a large city. They were asked to give SCS Engineers their insight regarding recycling operations for coffee pods. The consensus of the discussions was that the multimaterial composition, small size and contamination of coffee pods result in their frequent rejection and disposal in landfills.

[26] MRFs are specialized plants that receive, separate and process recyclable materials to be sold as raw materials to manufacturers.

• **Economic feasibility.** SCS found that the market value of materials recovered from K-Cup pods is generally insufficient to justify the labor or equipment costs required to process them. Facility operators reported that mixed plastics recovered from similar products often generate negative economic returns, including circumstances in which operators must pay brokers to remove such material.

34. Based on these findings, SCS concluded that municipal recycling programs serving a substantial majority of U.S. consumers—at least 60 percent—do not accept K-Cup pods for recycling and that representations describing K-Cup pods as "recyclable" do not reflect typical real-world disposal outcomes.[27] Although some recycling programs accept #5 plastic, SCS determined that K-Cup pods are generally not recyclable in practice due to the factors described above.

**(c) Recycling Facility Statements**

35. Recycling facilities, municipalities, and waste management authorities across the United States uniformly identify K-Cup pods as non-recyclable and direct them to disposal rather than recycling—even when labeled "recyclable."[28]

36. Publicly available recycling guidance from waste management companies and local governments serving tens of millions of residents in numerous states—including California, Colorado, Connecticut, Illinois, Maryland, Massachusetts, Minnesota, Nebraska, Oregon, Pennsylvania, Texas, Vermont, and Washington—expressly instructs residents to place single-serve coffee pods, including K-Cups, in the trash.[29]

---

[27] SCS Engineers Report, *supra* note 40, at 10.
[28] Truth in Advert., Inc., *Keurig's Deceptive "Recyclable" K-Cup Pod Campaign* 11–14 (Jan. 26, 2026), https://truthinadvertising.org/wp-content/uploads/2026/01/1_26_26-Keurig-complaint-to-FTC.pdf.
[29] *Id.*; see also Casella Waste Sys., *Zero-Sort Recycling Poster* (coffee pods "NOT ACCEPTED"), https://www.casella.com/media/5bdbwjbi/poster-zerosort-85x11_v05.pdf; Recology, *Western Oregon Waste Zero Customer Service & Recycling Guide* (2024) (listing

37. These sources consistently explain that K-Cup pods are rejected from recycling streams due to their small size, multi-material construction, contamination from coffee grounds and liquids, and incompatibility with automated sorting equipment.[30] Several jurisdictions further caution that recyclability labels do not reflect local acceptance and that products labeled "recyclable" may nonetheless be considered contamination.[31]

38. These facility statements corroborate the findings of SCS Engineers and confirm that, in real-world municipal recycling systems, K-Cup pods are not typically recycled.[32]

**E. Defendant's Campaign Violates the Green Guides**

39. The Federal Trade Commission's Guides for the Use of Environmental Marketing Claims ("Green Guides") provide that a product should not be marketed as "recyclable" unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing.[33] The Green Guides further state that unqualified recyclable claims are appropriate only where recycling facilities are available to a

---

coffee pods as "Top Contaminants"), https://www.recology.com/wp-content/uploads/2024/01/RWO_Valley_ServiceGuides_2024.pdf; Recycle By City, *Coffee Pod Disposal Guidance*, https://www.recyclebycity.com/.

[30] Truth in Advert., Inc., *supra* note 44, at 11–14; see also SCS Eng'rs, *Expert Report on the Recyclability of K-Cup Pods* 8–10 (Sept. 30, 2025), https://truthinadvertising.org/wp-content/uploads/2026/01/9_30_25-SCS-Engineers-Expert-Report.pdf.

[31] See, e.g., City of Seattle, *Where Does It Go? – Coffee Pods* (stating coffee pods are not recyclable "even if labeled 'Recyclable'"), https://www.seattle.gov/utilities/your-services/collection-and-disposal/where-does-it-go#/item/coffee-pods;
RecycleCT, *What's In / What's Out* (coffee pods considered contamination even if labeled recyclable),
https://www.newingtonct.gov/2678/RecycleCT.

[32] Truth in Advert., Inc., *supra* note 44, at 11–14.

[33] Guides for the Use of Env't Mktg. Claims, 16 C.F.R. § 260.12(a) (2012), https://www.ftc.gov/sites/default/files/documents/federal_register_notices/guides-use-environmental-marketing-claims-green-guides/greenguidesfrn.pdf.

substantial majority of consumers, defined as at least 60 percent.[34]

40. As described above, SCS Engineers determined that municipal recycling programs serving at least 60 percent of U.S. consumers do not accept K-Cup pods for recycling.[35] The Green Guides also caution that a recyclable claim is deceptive where a product is made from recyclable material but, due to its size, shape, or other attributes, is not accepted in recycling programs.[36] K-Cup pods exhibit these characteristics.

41. Keurig includes qualifying language on K-Cup packaging and other marketing materials—such as instructions to "check locally" and statements that the pods are "not recycled in many communities"—but these disclosures do not clearly convey the limited recyclability of K-Cup pods. The qualifying statements appear in fine print that is visually separated from the primary recyclability claim and is unlikely to be noticed in the context of routine, low-cost purchasing decisions.[37]

42. The Green Guides further advise that vague or general qualifications may be insufficient where recycling availability is limited.[38] Instructions to "check locally" do not inform consumers whether K-Cup pods are accepted in their communities and may lead consumers to incorrect conclusions where local programs accept #5 plastic generally, but not K-Cup pods specifically.[39] In addition, SCS Engineers found that many municipalities and recycling facilities

---

[34] *Id.* § 260.12(b).
[35] Truth in Advert., Inc., *Keurig's Deceptive "Recyclable" K-Cup Pod Campaign* 10–12 (Jan. 26, 2026), https://truthinadvertising.org/wp-content/uploads/2026/01/1_26_26-Keurig-complaint-to-FTC.pdf.
[36] 16 C.F.R. § 260.12(d).
[37] Truth in Advert., Inc., *supra* note 32, at 4–8; Jeff Johnson, *Report on Consumer Perception of Recyclability Claims* (Jan. 2, 2024).
[38] 16 C.F.R. § 260.12(b).
[39] Expert Declaration of Thomas J. Maronick ¶ 13 (Dec. 17, 2019), cited in Truth in Advert., Inc., *supra* note 32, at 15.

do not readily provide item-specific recyclability information.[40]

43. Similarly, statements that K-Cup pods are not recycled in "many communities" do not convey the scope of the nationwide limitations on their recyclability or provide meaningful guidance to consumers.[41] The Green Guides explain that, where recycling facilities are available only to a few consumers, marketers should use more explicit disclosures indicating that recyclability is limited to a small number of communities.[42]

**F. FED. R. CIV. P. 9(b) ALLEGATIONS**

44. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.

Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

(a) **WHO:** Defendant Keurig Dr Pepper, Inc.

(b) **WHAT:** Defendant's conduct was, and continues to be, deceptive because it is deceiving consumers into believing that the Products are recyclable when the Products are not recyclable. Defendant failed to accurately inform Plaintiff that the Product was not recyclable. Defendant knew or should have known, as the manufacturer and marketer of the Products with superior knowledge of the composition of its Products, that this information is material to reasonable consumers. Yet Defendant misrepresented, on the labeling and advertising of its Products, that the Products were recyclable. Defendant knew or should have known that the Product

[40] Truth in Advert., Inc., *supra* note 32, at 15–16.

[41] *Id.* at 14–16.

[42] 16 C.F.R. § 260.12(b).

was not recyclable because Defendant is the manufacturer of the Product and has quality control testing protocols set in place that should have alerted Defendant to the lacking nature of the Product's recyclability.

(c) **WHEN:** Defendant engaged in this deceptive conduct continuously throughout the applicable statutory periods, including at the point of sale. Defendant's false and misleading recyclability representations were printed prominently on the front of the Product's packaging conspicuously for consumers to view and rely on.

(d) **WHERE:** Defendant's misrepresentations were made on the Product's label on the front package and were thus viewed by every purchaser, including Plaintiff, at the point of sale in every transaction. The Products are sold in brick-and-mortar stores and online in New York. Defendant's failed obligations occurred in Defendant's manufacturing facilities.

(e) **HOW:** Defendant misrepresented on the Products' label that the K-Cups were recyclable when they are not. And as discussed in detail throughout the Complaint, Plaintiff and Class Members read and relied on Defendant's misrepresentations regarding the Product's recyclability before purchasing the Products and in choosing to purchase the Products.

(f) **WHY:** Defendant misrepresented the recyclability of its Products. These representations were material because they induced consumers like Plaintiff to purchase the Products for their purported environmental benefits while charging a price premium. Accordingly, due to the recyclability representations, Plaintiff and Class Members paid a price premium for the Products that they would not have, or would have paid substantially less for, had the Products not been, or risked not being, deficient in their protein composition, contrary to Defendant's express representations. As such, Defendant unlawfully profited by selling the Products to thousands of consumers throughout the nation, including Plaintiff and the Class Members.

(g) **INJURY:** Plaintiff and Class Members were injured by Defendant's conduct in that they would not have purchased Defendant's Products or would not have purchased them on the same terms, had they known that Defendant's Products were not recyclable.

## FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 349
## (On Behalf of Plaintiff and the other New York Class Members)

60. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

61. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

62. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the other New York Members seek monetary damages against Defendant.

63. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

64. Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and the other New York Class Members to purchase Defendant's Products. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

65. Plaintiff and the other New York Class Members have been injured inasmuch as they purchased Products that were mislabeled. Accordingly, Plaintiff and the other New York Class Members received less than what they bargained and paid for.

66. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

67. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the other New York Class Members are entitled to statutory damages of $50 per transactionand attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the other New York Class Members)**

68. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

69. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

70. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

71. Defendant's labeling and advertisements contain untrue and materially misleading statements.

72. Plaintiff and the other New York Class Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled. Accordingly, Plaintiff and the other New York Class Members received less than what they bargained and paid for.

73. Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the other New York Class Members to buy Defendant's Products.

74. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

75. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

76. Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

77. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

78. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the other New York Class Members are entitled to statutory damages of $500 per transaction and attorneys' fees and costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative

of the Class under Rule 23 of the FRCP;

(b) Awarding statutory damages of $50 per transaction, pursuant to N.Y. GBL § 349;

(c) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(d) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

Granting such other and further relief as the Court may deem just and proper.

DATED: August 31, 2026

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
*mreese@reesellp.com*

*Counsel for Plaintiff and the New York Class*